### KERBS et al. v. ROSENSTEIN et al.

(Supreme Court, Appellate Division, First Department. December 7, 1900.)

INJUNCTION—PICKETING FACTORY BY STRIKERS—DISSOLUTION.

In an action against labor unions, their officers, members, and others, to restrain them from picketing plaintiffs' factory during the pendency of a strike, and otherwise unlawfully interfering with plaintiffs' business and employés, a preliminary injunction was properly dissolved, where, on motion therefor, the material acts of actual or threatened injury alleged in support thereof were denied by full and unreserved affidavits, and were not established by a preponderance of proof.

McLaughlin, J., dissenting.

67 N.Y.S.—25

Appeal from special term, New York county.

Injunction by Edward A. Kerbs and others against Nathan Rosenstein and others. From an order vacating a preliminary injunction (66 N. Y. Supp. 42) plaintiffs appeal. Affirmed.

The action was brought to restrain the defendants from the commission of certain acts specified in the complaint, which the plaintiffs allege were unlawful in their character, and injurious to their business, instigated, promoted, or aided by some of the defendants, and actually committed by others; the whole being the result of a conspiracy between certain labor unions and associations, or their members, and various striking employés of the plaintiffs. The complaint presents a very formidable arraignment of the persons sought to be implicated in the acts set forth therein as having been committed or threatened by the strikers. It is alleged that the plaintiffs, being manufacturers and sellers of cigars in the city of New York, with a large capital invested in their business, had in their employment about 2,000 persons; that on the 9th of March, 1900, these employés went out upon "a strike"; that since that date all the defendants have "continuously unlawfully combined and conspired together to prevent any persons from accepting employment from and working for plaintiffs in their said business, and, in pursuance of said unlawful combination and conspiracy, have prevented large numbers of persons from entering plaintiffs' employment, and, for the purpose of preventing and deterring all persons from entering plaintiffs' employment, have engaged in collecting disorderly crowds, which maintain a threatening appearance and conduct, and address threats, menaces, and abusive language to working men and women who are willing to work for plaintiffs, thereby putting them in fear of bodily injury, and of being held out to their comrades as unworthy persons and criminals, to such an extent as to intimidate and prevent them from entering plaintiffs' employment, and prevent them from assisting plaintiffs in their business." The defendants upon the record are Nathan Rosenstein, individually and as president of local union No. 144 of the Cigar Makers' International Union of America, an unincorporated association, and also as chairman of the joint advisory board of said local union No. 144; George W. Perkins, as president of the Cigar Makers' International Union of America, an unincorporated association; Albert Marousek and Isaac Bennett, individually and as members of the joint advisory board of said local union No. 144; the said Perkins and James Wood, one Gompers, one Murphy, one Tracy, one Bolio, Samuel B. Hasson, Charles Sprecht, and Gibson Weber, individually and as members of the executive board of said Cigar Makers' International Union of America; Joseph Bilsky, Mollie Lynch, Mary Peider, Annie Knapp, Annie Streihart, and two individuals sued by fictitious names, and the local union No. 144 and the international union. The allegations respecting the two unincorporated associations are that their objects are to procure and compel the employment of members of said associations exclusively by all manufacturers of cigars, and to plan, advise, assist, and carry on strikes and boycotts against manufacturers who refuse to accede to the demands of such associations; that the Cigar Makers' International Union of America is managed by the defendant Perkins, as president, and by the defendants Perkins, Gompers, Wood, Murphy, Bolie, Hasson, and Weber, as the executive committee; that by the constitution of both associations the Cigar Makers' International Union of America has power and authority, and exerts the same, over strikes and boycotts carried on by the various local unions,—among them, said local union No. 144. It is then alleged, on information and belief, that the local union No. 144 is managed and controlled by the defendant Rosenstein, as president, and by him and the defendants Bennett and Marousek, constituting what is called the "Joint Advisory Board of the Local Union No. 144," subject only to the order of the executive board of the Cigar Makers' International Union of America; that the local union No. 144 conferred upon the joint advisory board power to order and conduct strikes and boycotts, the making of demands upon manufacturers in relation to hours of labor, rate of wages, and employment of hands, conducting the details of strikes, and prescribing the conduct of strikers towards former employers, as in the manner of picketing and patrolling factory premises, and towards nonstrikers in the matter of interference with their

personal liberty; that prior to the 9th day of March, 1900, plaintiffs had in their employ about 2,000 persons, who on that day, without any notice, and acting, "as plaintiffs are informed and believe," under the instructions and by the advice and with the consent and connivance of the executive board of said Cigar Makers' International Union of America and of said defendant Rosenstein, individually and as president of said local union No. 144, and as chairman of the joint advisory board of said local union No. 144, and of the defendants Marousek and Bennett, individually and as members of the joint advisory board, left the plaintiffs' employment and went on strike; that the said defendants Rosenstein and Bennett notified plaintiffs that said joint advisory board of said local union No. 144 was in charge of the strike, and would support it until the demands of the strikers were acceded to; that the plaintiffs refused to accede to the demands of the strikers, and immediately thereafter, "as plaintiffs are informed and believe," and by the advice and direction and with the consent and connivance of the executive board of the two associations and of said Rosenstein, individually and as president of local union No. 144, and as chairman of said joint advisory board, and of the defendants Marousek and Bennett, individually and as members of said joint advisory board, assisted by the defendants Lynch, Peider, Knapp, Streihart, and Bilsky, a picket or patrol service up and down the sidewalk immediately in front of the entrance to plaintiffs' factory was instituted, with the object and for the purpose of preventing, by threats of bodily harm and by intimidation and insult, persons from entering into the employment of plaintiffs, and inducing persons in the employ of plaintiffs to leave plaintiffs' employment. Then follows .the allegation above referred to concerning the conspiracy and unlawful combination, and a general allegation that the defendants Lynch, Peider, Streihart, Knapp, and Bilsky, being the patrol or picket force, interfered with the access to the plaintiffs' premises, and, by insults, threats, and personal violence, interfered with plaintiffs' employés in coming to and going from the factory, and intimidated and prevented large numbers of persons from entering plaintiffs' employment, who would otherwise have done so, and have induced persons to leave plaintiffs' employment; that said defendants and the defendant Rosenstein have stated and threatened to continue such conduct, and all of the defendants have threatened and are threatening and intend to and will continue in the unlawful and wrongful conduct, unless enjoined from so doing; that the plaintiffs succeeded in getting 500 persons to enter their employment; and that the plaintiffs' business is being crippled and very seriously damaged by reason of the acts of the defendants.

Upon this complaint and supporting affidavits, an injunction was procured, the restraining provisions of which are that "the defendants above named, and each and all of them, both in their individual and representative capacities, and their, and each and all of their, attorneys, agents, and servants, and each of them, and the attorneys, agents, and servants of each of them, and the Cigar Makers' International Union of America, and local union No. 144 of the Cigar Makers' International Union of America, and the members, employés, agents, directors, officers, committees, and attorneys of each of them, are hereby enjoined and restrained, until the final determination of this action, from interfering with, annoying, accosting, threatening, waylaying, and following the plaintiffs and their employés, hands, and workers, and from loitering around, about, picketing, patrolling, and standing in and about the streets and sidewalk in front of the premises No. 1020 Second avenue, and streets adjacent thereto, and from loitering at and near, picketing, patrolling, waylaying the plaintiffs and their, and any of their, employés, hands, and workers, and persons seeking employment of the plaintiffs, on the streets and sidewalks in front of, adjacent to, and at the houses of the plaintiffs, their employés and workers, and from doing any act or thing the commission of which has the tendency or effect of molesting the plaintiffs and their employés in the quiet and peaceful emjoyment of their business, and their going to and coming therefrom. It is further ordered that the defendants local union No. 144 of the Cigar Makers' International Union of America, and Cigar Makers' International Union of America, and the joint advisory board of said local union No. 144, and the executive board of said Cigar Makers' International Union of America, and Nathan Rosenstein, individually and as president of said local

union No. 144, and as chairman of said joint advisory board, and Albert Marou-
sek and Isaac Bennett, individually and as members of said local union No.
144, each and all of them, and their, and each of their, and each and all of the
attorneys, agents, and servants of each of them, be, and they are hereby,
enjoined and restrained, until the final determination of this action, from order-
ing, directing, planning, and knowingly permitting, picketing, patrolling, and
loitering about the plaintiffs' premises, No. 1020 Second avenue, and any inter-
ference with, annoyance, threats, and insults to, the plaintiffs and their
employés and workers, and persons seeking work in plaintiffs' factory, whether
in the streets, or on the sidewalk adjacent to said factory, or in any other
place."

Argued before VAN BRUNT, P. J., and McLAUGHLIN, RUMSEY,
PATTERSON, and O'BRIEN, JJ.

Clarence J. Shearn, for appellants.
Vernon M. Davis, for respondents.

PATTERSON, J. The injunction was contained in an order to
show cause why it should not be continued and made permanent
until final judgment in the action, and upon the hearing of that
order the plaintiffs' case was met by affidavits denying the forma-
tion or existence of a conspiracy, and also denying the specific
acts which the plaintiffs claim constituted violence towards their
employés, or threats or intimidation, or efforts illegitimately to pre-
vent persons entering the employment of the plaintiffs, or to in-
duce them to leave that employment. Upon a full consideration
of the affidavits, the justice at special term decided to dissolve the
injunction; and, upon a critical examination of all that is contained
in the appeal book now before us, we cannot say that the court
below was in error in its conclusion that the rights of these parties
should not be definitely passed upon until a full investigation, by
examination and cross-examination of the witnesses, could be had
upon a formal trial of the cause. It is quite apparent that the
very serious allegations of the complaint and the affidavits upon
which the injunction was granted have been in their most essential
features successfully refuted by the affidavits read on behalf of the
defendants. It is abundantly shown that neither the Cigar Makers'
International Union of America nor local union No. 144 had any-
thing whatever to do with originating the strike among the plain-
tiffs' employés. Of the 2,000 employés who quit work, 1,600 were
nonunion members; only 400 of them belonged to the associations.
The strike was the voluntary and spontaneous action of the strikers
themselves, whose grievances are set forth in the papers before us.
The claim that Rosenstein and Bennett, acting for their respective
associations, advised the strike, or that their associations had any-
thing whatever to do with it, except, subsequently to its occurrence,
to furnish money for the support of the strikers, is disproven. We
do not find in this record that the two associations, either sep-
arately or conjointly, are to be held responsible for any of the
acts of their individual members, or of individual employés of the
plaintiffs engaged in the strike. The information upon which the
allegations against these associations are made, and the grounds
of the plaintiffs' belief respecting the same, are not made to ap-

pear in such manner as would authorize the court to maintain an injunction against those associations. That Rosenstein and Bennett and Marousek, and others who were members of these associations, went among the employés and consorted with them during the strike, is clear, but that they acted under orders of their associations is not established. Every act of alleged violence and every specific charge of threats or intimidation by those engaged in picketing and patrolling is denied under oath, fully and unreservedly. The defendants' version of the case, as presented by affidavits, is that the few girls who were engaged at stated hours in the morning and in the afternoon upon the street, and accosting and speaking to employés entering or leaving the plaintiffs' premises, were merely stating the case of the strikers to those with whom they entered into conversation, and the few specific acts of violence related in the plaintiffs' affidavits are positively denied by the affiants for the defendants. We are asked to hold that any species of picketing or patrolling by strikers is unlawful, and that therefore an injunction should issue to restrain such acts. We are not called upon to decide that question upon such a conflict as appears in this case as to what was really done by these so-called pickets or patrol. Upon the general rights of employés to strike, and quietly and peaceably to maintain their cause against their employers, no dispute is made. The justice in the court below was not satisfied that such conditions existed of actual or threatened injury to the plaintiffs as would justify the granting, pending the action, of that full relief which, he thought, should only be allowed, if at all, after a full trial of the cause. It is alleged by the plaintiffs that at one time, in order to their protection, they called for a police force, and that 20 policemen were furnished for their protection; but when that was done, how long it was continued, and what its necessity was, do not appear. If the facts as alleged by the plaintiffs were established by a preponderance of proof, we should have no difficulty in reinstating some of the provisions of the injunction, but upon these affidavits a case is not made out for such relief. For that reason we must affirm the order of the court below, with $10 costs and disbursements.

VAN BRUNT, P. J., and RUMSEY and O'BRIEN, JJ., concur.

McLAUGHLIN, J. (dissenting). I cannot agree to an affirmance of the order appealed from. The plaintiffs are engaged in the manufacture of cigars, and the action is brought to restrain the defendants, the officers and managers of certain cigar makers' unions, their agents and servants, from illegally interfering with the business of the plaintiffs, and from illegally preventing them from obtaining workmen in their factory. The moving papers, upon which the plaintiffs based their application to have a temporary injunction continued pendente lite, established that the defendants have ordered a strike of the workmen in the plaintiffs' factory, and, for the purpose of making such strike effective, have placed "pickets" in front of their building; that these pickets loiter and walk slowly

and continuously in front of the building; that they jostle "against employés coming in and going out, sneering, hooting, and laughing at employés, calling them by vile names, and urging them to leave" plaintiffs' employment, "and persuading would-be employés, by means of argument, threat, and fear of bodily harm, not to enter" plaintiffs' employment; that they congregate in front of plaintiffs' building, preventing access thereto, and that at least upon one occasion a picket forcibly seized a person who was applying for employment, and endeavored by physical force to pull such person from the entrance to the building, and, upon being prevented from doing so, made certain threats, and upon another occasion a picket made insulting remarks to a girl coming out of the factory, and another picket stopped a girl (one of plaintiffs' employés), and told her she should not go into the building for the purpose of working therein, and that if she continued to work for the plaintiffs she would be "licked"; and that "within a fortnight after the strike" had been ordered, and after the plaintiffs had put "about five hundred persons to work" in their factory, "owing to the presence of such patrollers, and to their manifest intention to intimidate and do harm" to such employés, the plaintiffs were obliged to, and did, have 20 police officers detailed to special service in the vicinity of their factory "for the protection of" their "employés." The allegation that 20 police officers were thus detailed for the purpose specified is nowhere denied, and some of the specific acts alluded to in the moving affidavits are not clearly or satisfactorily denied. Therefore the court not only had the right, but it was its duty, it seems to me, to restrain the continuance of them by injunction. Can it be that a court of equity will refuse to exercise its equitable powers to restrain unlawful acts of this character? If so, I am at a loss to understand upon what principle it can be done. It may be that picketing, per se, is not an illegal act, but that is not the question here presented. Here something more was done than picketing. Intimidation, coercion, and force were used; and such acts no court, so far as I am aware, has yet refused to restrain. It is true that the pickets were women, but this does not detract from the illegality of the act, and especially when the acts of such women were directed against other women and girls in the employ of the plaintiffs. What was said and done by the pickets was calculated to, and unquestionably did, intimidate and coerce, to a certain extent, the plaintiffs' employés and others seeking employment. Therefore this case is brought directly within the recent decision of this court in the case of Printing Co. v. Delaney, 48 App. Div. 623, 62 N. Y. Supp. 750. The preliminary injunction was too broad, and should have been modified so as to prevent the defendants, their agents, servants, and members, from interfering with the plaintiffs' business, or picketing their factory in such a manner as to express or imply a threat, intimidation, coercion, or force; and, as thus modified, it should have been continued during the pendency of the action. Such a determination would not infringe upon any rights of the defendants, so long as they conducted themselves in a quiet, peaceable, and law-abiding manner. But if they went beyond that,—if

they resorted to intimidation, to coercion, to threats, or to force, for the purpose of injuring the plaintiffs or their business,—then the injunction would, as it should, apply to their acts. For the foregoing reasons, I am unable to concur in the opinion of Mr. Justice PATTERSON. I think the order appealed from should be reversed, with $10 costs and disbursements, and the preliminary injunction modified as suggested in this opinion, and, as thus modified, continued during the pendency of the action.